UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEVEN J. HAWKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:07-cv-647 |
| | § | |
| JOHN POTTER, POSTMASTER | § | |
| GENERAL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment.   For the following reasons, the Court finds that Defendant's Motion, Doc. No. 12, should be **DENIED**.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff is an African-American male born in 1957.  He alleges that he was discriminated against based on race, age, and prior protected activity in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA") when he was not selected for the position of Manager, Maintenance Operations ("MMO") at the Houston Processing and Distribution Center Office ("P&DC") in 2004 and in 2006.[1]  Plaintiff is currently a Manager, Operations Support at the P&DC; he has worked for the United States Postal Service for approximately 25 years.

On June 29, 2004, Plaintiff was notified that he was not selected for the MMO position, and that Richard Kirk, a Caucasian male was selected instead.  Plaintiff again applied for an

---

[1] Plaintiff's age discrimination claim was asserted only with respect to the 2004 incident.

MMO position in 2006, and on March 21, 2006, was again informed that he was not selected for the position.  Instead, Mitchell Keppler, a Caucasian male, was selected for the position.

Plaintiff filed a formal complaint with the EEOC in November 2004 following the first non-selection, claiming that he had been discriminated against based on age, race, and in reprisal for prior EEO activity.[2]  Following an investigation and hearing, the Administrative Judge issued a finding of no discrimination.

Plaintiff filed another complaint with the EEOC following the March 21, 2006, non-selection, claiming that he had been discriminated against based on race and that the non-selection was in retaliation for his 2004 EEO Complaint.  Plaintiff waived a hearing, and the Postal Service again issued a final agency decision finding no discrimination.

**B.    2004 Non-Selection**

The Postal Service issued a vacancy announcement on March 16, 2004.  (Doc. 12, Ex. 1.) Eighteen applicants applied for the position.  (Doc. 12, Ex. 2.)  A Review Board considered the applicants and recommended five candidates, including Plaintiff and Richard Kirk.  (Doc. 12, Ex. 2.)

The candidates were interviewed telephonically by John C. Guillory, the Selecting Official.  (Doc. 12, Ex. 2.)  Guillory posed hypothetical questions to each applicant.  (Doc. 12, Ex. 2.)  Based on the interviews, Guillory recommended Richard Kirk, a Caucasian male, for the position of MMO because he thought Kirk had the "best chance of success in this position and met the overall needs of the Maintenance Department."  (Doc. 12, Ex. 2.)  In a written analysis of the five candidates, Guillory noted that Kirk had an "excellent" interview, while Plaintiff's interview was "good."  (Doc. 12, Ex. 3.)  Guillory acknowledged that Plaintiff was qualified for the position.  (Doc. 12, Ex. 3.)  Guillory stated in the written analysis that he did not recommend

---

[2] Plaintiff had also filed an EEO Complaint against John Guillory, the selecting official, in 1988.

Plaintiff because, although Plaintiff had the most experience in Maintenance Operations Support, Plaintiff had the least overall experience in Maintenance Supervision on the floor. (Doc. 12, Ex. 3.) Guillory also testifies via affidavit that his recommendation of Kirk was guided by the overall needs of the Maintenance Department. (Doc. 22, Ex. 1.) Guillory asserts that Kirk's experience in facilities or "building" maintenance was particularly relevant to his decision:

> The Maintenance Department has two distinct areas of emphasis—facilities and machinery. I had an MMO on my staff on extended sick leave with extensive experience in facilities maintenance and repair. I was seeking an MMO that filled that experience gap. In addition to having an excellent interview, Mr. Kirk had extensive experience in facilities maintenance. . . . Mr. Hawkins did not interview as well as Mr. Kirk and his experience was more focused on equipment and maintenance support rather than facilities.

(Doc. 22, Ex. 1.) Guillory made similar comments to Plaintiff in a telephone conversation, and Plaintiff acknowledges that Kirk had more building side experience. (Doc. 12, Ex. 4, at 45 (stating that "[i]n a telephone conversation, [Guillory] told me I had more maintenance support experience than Kirk and he selected Kirk because he had more building side experience" and agreeing that this was true).) Allison Crenshaw, the Senior Plant Manager and Concurring Official for the selection, reviewed Guillory's recommendation, found his reasons to be reasonable and rational, and approved the selection of Kirk for the MMO position. Crenshaw is an African-American female. (Doc. 12, Ex. 5.)

### C.    2006 Non-Selection

The Postal Service issued a Vacancy Announcement for another MMO opening at the Houston P&DC on October 24, 2005. A Review Board considered twelve applicants for the position and recommended five, including Plaintiff and Mitchell Keppler. (Doc. 12, Ex. 2.) Guillory again interviewed the applicants telephonically and posed hypothetical questions to each. (Doc. 12, Ex. 2.) Based on the interviews, Guillory recommended Mitchell Keppler, a

Caucasian male, for the MMO position. (Doc. 12, Ex. 11.) In a written Comparative Analysis, Guillory stated that Keppler had a "very good" interview, while Plaintiff's was rated "good." (Doc. 12, Ex. 11.) Guillory testifies via affidavit that, in addition to having had a very good interview, Keppler was a graduate of the Postal Service's Maintenance Leadership Development Program ("MDLP"), which is a "selective, two-year training program in which the candidates spend time working in each supervisory and management position in the Maintenance Department." (Doc. 22, Ex. 1.) Only eight candidates are selected for the MDLP each year from a four-state region. (Doc. 22, Ex. 1.) Allison Cashaw, the Concurring Official for the selection, again found Guillory's rationale for the selection reasonable and concurred with the selection of Keppler. (Doc. 12, Ex. 5.)

## II.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences

in that party's favor. *Crawford*, 234 F.3d at 902. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 130, 150-51 (2000) (quoting *Anderson*, 477 U.S. at 250-51).

## III.   AGE DISCRIMINATION

Plaintiff alleges in his Complaint that Guillory discriminated against him based on age when not selecting Plaintiff for the MMO position in 2004. In 2004, Guillory selected Richard Kirk for the position. At his hearing before the AJ, Plaintiff testified that he was, in fact, younger than Richard Kirk. (Doc. No. 12, Ex. 4., at 62-63.) At the time of the non-selection, Plaintiff was 45 years old and Mr. Kirk was in his 50s. (*Id.*) The record reflects that both were therefore within the class protected by the Age Discrimination in Employment Act. *See* 29 U.S.C. § 631(a). Plaintiff has not provided any evidence suggesting that Kirk was, in fact, younger than he or any other evidence demonstrating that he was otherwise discharged because of his age. Plaintiff has therefore failed to state a *prima facie* case of age discrimination. *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (noting that *prima facie* case of age discrimination requires that a plaintiff show, *inter alia*, "he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."). As noted. Plaintiff does not allege that age discrimination occurred in the 2006 selection.

## IV.   RACE DISCRIMINATION

### A.   Title VII Standard

"Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin." *Grimes v. Texas Dep't of Mental Health*, 102 F.3d

137, 140 (5th Cir. 1996). Title VII claims are subject to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

First, the plaintiff must establish a *prima facie* case of discrimination. *Id.* at 802. In a failure to promote case, a plaintiff satisfies this burden by proving: "(1) that the employee is a member of the protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004).

If a plaintiff makes this *prima facie* showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. "The defendant's burden during this second step is satisfied by producing evidence, which, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Price v. Federal Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *St. Mary's Honor Center*, 509 U.S. at 509)).

If the Defendant meets its burden of production, "the McDonnell Douglas framework—with its presumptions and burdens" disappears, and "the sole remaining issue" is "'discrimination vel non.'" *Reeves*, 530 U.S. at 142-43 (citing *St. Mary's Honor Center*, 509 U.S. at 510)). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143 (citing *Burdine*, 450 U.S. at 253). To satisfy that burden, the plaintiff "may

attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'"[3] *Id.* (citing *Burdine*, 450 U.S. at 256).   "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)); *see also Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002) (finding that an employer's inconsistent explanations for its employment decisions at different times may permit a jury to infer that the proffered reasons are pretextual).

Importantly, "although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" *Reeves*, 530 U.S. at 143 (citing *St. Mary's Honor Center*, 502 U.S. at 511; *Burdine*, 450 U.S. at 255, n. 10).   On the other hand, even if the plaintiff presents some evidence that the defendant's legitimate non-discriminatory reason is false or a pretext, "such a showing will not always be enough to prevent summary judgment, because there will be cases where a plaintiff has both established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, yet 'no rational factfinder could conclude that the action was discriminatory.'" *See Price v. Federal Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (citing *Reeves*, 530 U.S. at 148).   As the Supreme Court has explained, "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's

---

[3] The plaintiff may also show that the defendant's articulated reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic ("mixed motive alternative"). *Rachid*, 376 F.3d at 312.   If a plaintiff shows that discrimination was a motivating factor in a mixed-motives case, defendant must then respond with evidence that the same employment decision would have been made regardless of discriminatory motivation. *Rachid*, 376 F.3d at 312 n.8 (citing 42 U.S.C. § 2000e-2(m)).

explanation of intentional discrimination." *St. Mary's Honor Center*, 509 U.S at 511. In a case in which Plaintiff shows a defendant's legitimate, non-discriminatory reason is false, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'" *Price*, 283 F.3d at 720 (citing *Reeves*, 530 U.S. at 148-49.); *see also Vadie v. Miss. State Univ.*, 218 F.3d 365, 374 n. 23 (5th Cir. 2000) (stating that a plaintiff can avoid summary judgment when the "evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a determinative factor in the actions of which the plaintiff complains").

One possible way in which a plaintiff may rebut a defendant's legitimate, non-discriminatory reason is by providing evidence that he was "clearly better qualified" than the employee chosen for the position. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356-57 (5th Cir. 2001) (noting that such evidence is probative of pretext). "However, the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Id.* at 357 (citing *Deines v. Texas Dept. of Prot. & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)). The Supreme Court has also noted that "qualifications evidence may suffice, at least in some circumstances, to show pretext." *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (declining to "define more precisely what standard should govern pretext claims based on superior qualifications," but rejecting the Eleventh Circuit's interpretation that "[p]retext can be established through comparing

qualifications only when the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face.")

**B.     Analysis**

Defendant concedes that Plaintiff can establish a *prima facie* case of discrimination. Defendant argues, however, that it had a legitimate, non-discriminatory reason for selecting Kirk and Keppler for the MMO positions in 2004 and 2006, respectively, and that Plaintiff's evidence does not create a fact question as to whether these reasons are false or unworthy of credence.

**1.     Legitimate, Non-Discriminatory Reason**

Defendant claims that Kirk and Keppler were hired because they were better suited for the MMO position based on their past experience and responses to hypothetical interview questions.   Defendant maintains that, in 2004, Kirk performed better than Guillory in his interview.   Defendant also contends that Guillory selected Kirk because his experience was better suited to the overall needs of the Maintenance Department.   Specifically, Kirk had more experience in facilities maintenance than Plaintiff, and Guillory had an MMO with extensive facilities experience out on extended sick leave and wanted to fill that experience gap.   (Doc. No. 12, Ex. 2; Ex. 4, at 45 (testimony by Plaintiff conceding that Kirk had more "building side" experience).)  Defendant similarly argues that, in 2006, Keppler performed better in his interview than Plaintiff and also was chosen based on the experience he gained from his participation in the MLDP program.

**2.     Pretext**

**a.     Candidate Qualifications**

Defendant maintains that Plaintiff cannot demonstrate pretext by establishing that he was clearly better qualified for the MMO position than either Kirk or Keppler.  Defendant alleges that

Plaintiff had a similar educational background as the two men and had served in similar positions at the Postal Service.  Defendant argues that all three men had served on three details and had extensive education and training within the Postal Service.

Plaintiff claims that he had the most seniority, knowledge, skills, and abilities out of the three men and was, therefore, a better qualified candidate for the MMO position.  Plaintiff's seniority argument is unsupported by the record.  The record reflects that Plaintiff had the same number of years of service as Keppler and fewer years of service than Kirk:  as of 2006, Plaintiff and Kirk had 25 years of service and Keppler had 29 (Doc. No. 12, Ex. 15, 16, 17.)

The evidence regarding the three men's respective supervisory experience, a qualification that Guillory emphasized in his written evaluation of the candidates and in his affidavit, does not make immediately clear which of the men was more qualified.  Plaintiff indicates that he has served in a supervisory position as Manager, Maintenance Operation Support since February 2000 and was Supervisor of Maintenance Operations from November 1995 to February 2000. (Hawkins Aff. Doc. No. 17, at 3.)  Plaintiff also served as a manager on several Postal Service details. (Doc. No. 17, Ex. 10.)  He had 14 months supervisory experience in a detail as MMO, the position that he was not selected for in 2004 and 2006.  Plaintiff holds two Associates Degrees from Houston Community College in computer maintenance and business management, and has a certificate in Electronics from Elkins Institute.

The record reflects that Kirk had three years of combined experience as a Supervisor of Equipment Maintenance and a Supervisor of Building Equipment Maintenance. (Doc. No. 12, Ex. 16.)  Unlike Plaintiff, Kirk had served on details in the position of Manager, Maintenance, which supervises the position of MMO. (*Id.*)  Kirk had 23 months of supervisory experience in a detail as MMO, the job Plaintiff was not selected for, which is 9 more months experience in this

position than Plaintiff had.  (*Id.*)  Kirk did not complete any formal degrees, though he did complete coursework at San Jacinto College.  (*Id.*)

The record reflects that Keppler served as Maintenance Engineering Specialist from June 2001 to the present, Supervisor, Maintenance Operations from February 1993 to June 2001. (Doc. 17 Ex. 9 (noting that Keppler's "prior supervisory positions" include Maintenance Engineering specialist and Supervisor Maintenance Operations); Doc. No. 17, Ex. 11; Doc. No. 17, Ex. 17.)  He also served as a "Supervisor, Building Services" from June 1991 until February 1993.  (*Id.*)  Unlike Plaintiff, Keppler served on details in the position of Manager, Maintenance, which supervises the position of MMO.  (Doc. No. 12, Ex. 17.)  Keppler also had 8 months of supervisory experience in a detail as MMO.  (*Id.*)  Keppler additionally had received two years of training in the MDLP program.[4]  Keppler holds a B.A. in Theology.

Plaintiff also proffers the testimony of Wendell Scott as evidence that he had more experience than Kirk and Keppler.  Wendell Scott, a former employee of Guillory, testified in an affidavit that Plaintiff had "more experience, and more responsibility" than Kirk when Plaintiff was a lower level manager, and that Kirk came from a different office "with less experience." (Doc. No. 17 Ex. 16.)  Scott also testifies that Plaintiff had managed a large facility while Keppler had managed a smaller facility "with less experience and less responsibility."  (*Id.*) Scott does not provide further explanation for this testimony.

Even construing the record in favor of Plaintiff however, it does not appear that Plaintiff has presented sufficient evidence to create a fact question as to whether he was "clearly better qualified" than Kirk or Keppler.  *See, e.g.*, *Celestine*, 266 F.3d at 357 (noting that the "bar is set

---

[4] Plaintiff argues that another African-American candidate, Ronald Davis, who was not selected in 2006 was a MLDP graduate, and concludes that the MLDP program "could not have been important."  (Hawkins Aff. Doc. No. 17, at 4.)  Plaintiff does not attempt to establish, however, that Davis's other qualifications were similar or superior to Keppler's.

high" for this kind of evidence and that differences in qualifications "are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" (citing *Deines*, 164 F.3d at 280-81)).

The record does seem to reflect that that Kirk had fewer overall years of supervisory experience than Plaintiff and less formal education than Plaintiff. Kirk did have nine more months of supervisory experience in the MMO position on a detail assignment, however, and Plaintiff recognizes that Kirk had more facilities maintenance experience than Plaintiff.[5] The Court understands that Plaintiff believes that he was clearly more qualified for the position of MMO than Kirk or Keppler. Plaintiff has not, however, provided evidence that he was "clearly better qualified" than the employee chosen for the position. *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) ("To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice.").

### b.  Reasons for Non-Selection

Plaintiff argues that Guillory has given inconsistent reasons for not selecting him for the MMO positions, establishing a fact question as to whether Defendant's purported legitimate, nondiscriminatory reason for Plaintiff's non-selection in 2004 and 2006 is a pretext. Plaintiff notes that Guillory's written comparative analysis in 2004 stated that Plaintiff was eliminated because he had the least amount of overall experience in Maintenance Supervision on the floor. Guillory later stated in an affidavit that he selected Kirk for the position of MMO in 2004 because Kirk, unlike Plaintiff, had extensive experience in facilities maintenance, and Guillory

---

[5] The Court will address Plaintiff's argument that this testimony contradicts Defendant's earlier proffered reason for Plaintiff's non-selection, *infra*.

was seeking a candidate with facilities maintenance and repair experience. (Doc. No. 12, Ex. 2, at 3.) Plaintiff contends, first, that he had more Maintenance Supervision experience than Kirk. It is difficult for the Court to determine on the basis of Plaintiff's briefing and the record exactly what constitutes "Maintenance Supervision experience on the floor." Plaintiff does appear to have more overall years of experience in supervisory positions than Kirk. Plaintiff argues, second, that facilities maintenance experience is not a requirement for the job of MMO. The job description, which states as a requirement that the candidate have "knowledge of building and equipment maintenance methods and practices," appears to contradict this assertion. It does appear that Guillory did inform Plaintiff that the reason he was not selected was due to his lack of building-side experience in a telephone call after Plaintiff's non-selection. (*See* Doc. No. 17, Ex. 4, at 45.) Plaintiff has presented at least some evidence, however, of inconsistencies in Guillory's proffered reasons for not selecting him as MMO. Guillory's initial reason for not selecting Plaintiff was that Kirk had more supervisory experience than Plaintiff; Guillory later changed that reason, claiming that Kirk had more *relevant* supervisory experience. In *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, the Fifth Circuit found a genuine issue of material fact regarding pretext where the defendant first claimed it did not promote plaintiff because he lacked "purchasing experience," and later clarified in litigation that he lacked "purchasing experience in the bottling industry". 482 F.3d 408, 412-15 (5th Cir. 2007). The Court notes that, in this case, the timing is less incriminating. In *Burrell*, the story changed in litigation. In this instance, Guillory offered Plaintiff the inconsistent reason in a telephone call before litigation. Although an inconsistency offered later in the process might have been more damaging to Defendant's case, the allegations as they are still create a question for the jury. Further, there appears to be a significant fact question as to which kind of supervisory experience

was most "relevant" to the MMO position.  It is necessary to resolve this question before evaluating whether Guillory's proffered legitimate, non-discriminatory reasons for not selecting Plaintiff, i.e., that Plaintiff had less relevant supervisory experience, was false.

Plaintiff also claims that Guillory again contradicted himself by saying, in the 2006 written comparative analysis, that Plaintiff was eliminated because he had the least amount of supervisory experience, but then stating in an affidavit that Keppler's MLDP experience was a reason for Keppler's selection.  Guillory did not, in fact, mention Keppler's MLDP experience in the written report.[6]  Guillory's additional mention of Keppler's MLDP experience does not directly contradict his earlier reasons for not selecting Plaintiff, but it is at least somewhat inconsistent.  As was the case with the 2004 non-selection, there does appear to be a fact question as to which kind of supervisory experience was most "relevant" to the MMO position. It is necessary to resolve this question before evaluating whether Guillory's proffered legitimate, non-discriminatory reasons for not selecting Plaintiff, i.e., that Plaintiff had less relevant supervisory experience, was false.

The court recognizes that "as a general rule judges are not as well suited by training or experience to evaluate qualifications for high level promotion in other disciplines as are those persons who have trained and worked for years in the field of endeavor for which the applicants under consideration are being evaluated."  *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993).  The court also notes that "[t]he mere fact that an employer uses subjective criteria is not, however, sufficient evidence of pretext."  *Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003).

---

[6] Plaintiff additionally alleges that Ronald Davis, an African-American male, was not selected in either 2004 or 2006 despite the fact that he had MLDP experience. (Hawkins Aff., Doc. No. 17, at 4.)  The Court has no way of knowing from this record, however, whether Ronald Davis was an otherwise similarly situated applicant.

### c.   Other Circumstantial Evidence of Discrimination

In support of his allegation of intentional discrimination, Plaintiff provides an affidavit from Wendell Bancroft Scott, who previously worked under Guillory in the maintenance department.  Scott testifies that from the late 1990s through April 1, 2007, he "observed, and personally experienced, that John Guillory did not promote, or recommend, black employees for higher level management positions in the maintenance department." (Doc. 17, Ex. 16.)  Scott points to the two promotions at issue in this case as examples. (*Id.*)  Scott does not point to other specific examples, nor does he clarify whether these other individuals were similarly situated to the employees who were promoted or recommended.

Scott further testifies that Guillory told him that "as long as he was manager, he would not promote me as a black man to any supervisory position" and that "as long as he was the maintenance manager, that he would not train me to be a lower or higher level supervisory position." (Doc. 17, Ex. 16.)  At a court supervised deposition, Scott claimed that Guillory made this statement to him sometime "in the 1990s," but that he could not recall the exact date. Deposition at 6.   Scott also acknowledged that he took Guillory's statement to mean that Guillory would not promote him personally, and Guillory did not say he would refuse to promote any African-American. *Id.*  At the deposition, Scott did suggest, however, that Guillory only chose whites for "higher level positions." *Id.* at 7.

More important than Scott's deposition testimony, however, is Plaintiff's own testimony in the EEO proceeding in 2006. Plaintiff there stated that Guillory had promoted to supervisory positions in the Maintenance Departments three African Americans:  Constance Cooper, Lewis Lawson, and John Ashley. (Doc. No.22, Ex. 4.)  Scott appeared to deny at deposition, however, that Guillory himself was responsible for Cooper's promotion,  claming that Cooper's promotion

was the result of a special program "instituted for that reason . . . to be fair." Deposition at 7. Scott admitted that Guillory had promoted Lewis Lawson, who is an African American, but explained that Lawson was friends with Allison Cashaw, and that Cashaw had forced Guillory to promote Lawson. *Id.* Scott also pointed out that Lawson was promoted to a position with less responsibility than an MMO position. Deposition at 19. However, because Scott's deposition included no suggestion that Scott was qualified to make statements about why different individuals were promoted, such statements are of very weak probative value.

Where there is no other evidence of pretext, race-related comments in the workplace can provide "sufficient evidence of discrimination" only if they are: "(1) related to the protected class of which the plaintiff is a member; (2) proximate in time to the employment action; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Manning v. Chevron Chemical Co., LLC,* 332 F.3d 874, 883 (5th Cir. 2003). After the Supreme Court's ruling in *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000), the Fifth Circuit has taken a more "cautious" view of the stray remark doctrine. *Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 577 (5th Cir. 2003); *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 229 (5th Cir. 2000) (noting that, even before *Reeves,* the Fifth Circuit had found that the 'stray remark' doctrine should be "narrowly cabined").

Guillory's alleged racist statement to Scott must be analyzed under this rubric. Race-related comments can be considered nothing more than 'stray remarks' only if there is no other evidence of discrimination. *See, e.g., Auguster v. Vermilion Parish School Bd.,* 249 F.3d 400, 404 n.7 (5th Cir. 2001); *Rubinstein v. Administrators of Tulane Educational Fund* 218 F.3d 392, 400 (5th Cir. 2000) (noting that the "only evidence" of discriminatory intent provided by plaintiff was the alleged stray remarks). Most cases applying the 'stray remarks' doctrine

"overwhelming" evidence in support of the defendant's legitimate, nondiscriminatory reason. *See, e.g., Rubenstein*, 218 F.3d at 400 (discussing defendant's "overwhelming" evidence); *Auguster*, 249 F.3d at 404 (discussing the "overwhelming evidence supporting the school board's legitimate justification"); *Russell*, 235 F.3d at 229 n.19 ("In our remarks jurisprudence, *Rubinstein* stands only for the proposition that an overwhelming case that the adverse employment actions at issue were attributable to a legitimate, nondiscriminatory reason will not be defeated by remarks that have no link whatsoever to any potentially relevant time frame. Were we to read more into *Rubinstein* in this regard, it would be in direct conflict with *Reeves*.").

The *Russell* court clarified that, generally, the value of race-related remarks "is dependent upon the content of the remarks and the speaker." *Russell*, 235 F.3d at 229 (citing *Reeves*, 530 U.S. at 151 ("finding that the age-related comments further supported the jury's verdict of liability because the content of the remarks indicated "age-based animus" and the speaker was "principally responsible for [the plaintiff's] firing.")). The *Russell* court found that the remarks at issue in that case were "certainly appropriate additional circumstantial evidence of age discrimination because their content indicates age animus and the speaker . . . was primarily responsible for [the plaintiff's] termination." *Russell*, 235 F.3d at 226. *Russell* acknowledged, however, that *Reeves* would probably allow the Court to follow the traditional "stray remarks doctrine" in those cases in which "the record conclusively revealed some other, nondiscriminatory reason . . . , or [that] the plaintiff created only a weak issue of fact as to . . . [pretext] and there was abundant and uncontroverted independent evidence that no discrimination had occurred." 235 F.3d at 229 (citing *Reeves*, 530 U.S. at 148).

The Court does not believe that this is a case in which Defendant has conclusively established its nondiscriminatory reason by overwhelming, uncontroverted evidence that no

discrimination has occurred.  In fact, the Court has already found that Plaintiff has created a fact question as to whether Defendant's legitimate, non-discriminatory reasons for not selecting him for MMO in 2004 and 2006 were pretextual.  Even if Scott's testimony about Guillory's race-related remarks – which, by Scott's admission were directed to him personally – is credited in full, it does not provide irrefutable evidence that Guillory's conduct was generally hostile to African Americans.  Further, the alleged comment was remote in time from the employment decisions of which Plaintiff complains.  Although the alleged comment cannot be considered of more than slight probative force, however, it is not the only evidence of discrimination.  Therefore, the Court cannot properly apply the "stray remarks" factors.  Guillory's alleged remark can serve as circumstantial evidence of discrimination in this case because it clearly indicates "race-based animus" and because Guillory was directly responsible for the decision not to promote Plaintiff.  *See Russell*, 235 F.3d at 229.

## V.  RETALIATION

### A.  Title VII Standard

A plaintiff may establish a prima facie case of unlawful retaliation by demonstrating: "1) he engaged in protected activity, 2) he suffered an adverse employment decision, and 3) a causal link exists between the protected activity and the adverse employment decision."  *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001).  To establish a causal link, an employee "should demonstrate that the employer knew about the employee's protected activity."  *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003).  If a plaintiff makes this prima facie showing, the burden shifts to the defendant to offer a legitimate reason for the employment decision.  If the defendant makes such a showing, the burden shifts back to the plaintiff to show that the articulated reason was a pretext for retaliation.  To demonstrate pretext,

a plaintiff must show that the adverse employment action would not have occurred but for his protected conduct. *Septimus v. University of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) ("This court has 'consistently held that in retaliation cases where the defendant has proffered a nondiscriminatory purpose for the adverse employment action the plaintiff has the burden of proving that 'but for' the discriminatory purpose he would not have been terminated.'" (citing *Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)). However, the "'causal link' required in prong three of the prima facie case for retaliation is not as stringent as the 'but for' standard." *Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001) (citing *Long v. Eastfield College*, 88 F.3d 300, 305 n. 4 (5th Cir. 1996)).

If a plaintiff seeks to establish a causal link based on temporal proximity between the protected action and the adverse employment action alone, the temporal proximity must be very close. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-274 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close. Action taken . . . 20 months later suggests, by itself, no causality at all." (internal citations omitted)). The Fifth Circuit has held that a five-month lapse between the protected activity and the alleged retaliatory act, without more, cannot establish a causal link. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002).

B.      Analysis[7]

---

[7] In his response to the pending Motion, Plaintiff asserts that he was retaliated against on the basis of prior EEO activity when Defendant failed to select him for the MMO position twice and "that he has been retaliated against since." Plaintiff does not in any way specify how he was allegedly retaliated against outside of the two non-selections. Plaintiff also appears to claim that he suffered some other type of "adverse employment action based on reprisal discrimination (retaliation)" after filing his 2004 EEO Complaint. Plaintiff does not specify what that adverse employment action was. The Court therefore focuses on the two non-selections.

### 1.   2004 Non-Selection

Plaintiff alleges, first, that his 2004 non-selection was in retaliation for an EEO complaint he filed against Guillory in 1988.[8]   Guillory testified before the AJ that at the time he selected Kirk for the MMO position in 2004, he did not remember the 1988 EEO filing by Plaintiff. (Doc. 12, Ex. 2.)   Shortly before the 2004 non-selection, Guillory approved Plaintiff for an extended detail and subsequently approved him for a cash award for his performance.   (*Id.*) Plaintiff provides no further evidence indicating that Guillory knew of the 1988 EEO charge. Aside from Plaintiff's own conclusory statement, he provides no additional evidence of a nexus between his 1988 EEO charge and his non-selection for the position of MMO sixteen years later. Plaintiff's claim for retaliation in the 2004 non-selection, therefore, fails as a matter of law.

### 2.   2006 Non-Selection

Plaintiff also claims that Guillory retaliated against him for filing the 2004 EEO by refusing to promote him to the MMO position in 2006.   Although Guillory was clearly aware of the 2004 EEO complaint, there was a 14-month period between the time Plaintiff filed the complaint and Plaintiff's non-selection for the 2006 period.   The Fifth Circuit has held that even a 5-month lapse, standing alone, is insufficient to establish a causal link between the protected activity and the alleged retaliatory action.   Because Plaintiff has provided no additional evidence other than temporal proximity to support his argument that the 2006 non-selection was retaliatory, Plaintiff fails to state a prima facie case of retaliation under Title VII.

## IV.   CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**   Plaintiff has failed to establish a genuine issue of material fact as to his age

---

[8] Plaintiff also apparently has filed at least one other EEO charge, but no other EEO charges have been discussed as the basis for Guillory's alleged retaliatory actions.

Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**   Plaintiff has failed to establish a genuine issue of material fact as to his age discrimination claims and retaliation claims, but there is a genuine issue of material fact as to Plaintiff's race discrimination claims under Title VII.

**IT IS SO ORDERED.**

**SIGNED** this 24th day of October, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE